Christen, Circuit Judge,
concurring:
I agree with the memorandum disposition, which I join in full. I write separately to emphasize the importance of contingency measures where, as here, EPA approves a state implementation plan (SIP) that includes section 182(e)(5) “new technology measures.” See 42 U.S.C. § 7511a(e)(5)(B).
California’s 2013 SIP for the South Coast “relies on three types of strategies to reduce basin-wide emissions to the extent necessary to demonstrate attainment of the 1-hour ozone standard”; (1) implementation of reasonably available control measures (RACM); (2) “commitments made by [the local and state air quality control boards] to bring certain regulatory initiatives to their respective boards on a certain schedule and to meet certain aggregate emissions reductions in certain years”; and (3) new technology measures. See Approval & Promulgation of Implementation Plans; California; South Coast 1-Hour & 8-Hour Ozone, Proposed Rule, 79 Fed. Reg. 29,712, 29, 718 (May 23, 2014). The South Coast 2013 SIP also includes, as required by the Clean Air Act, “enforceable commitments to develop and adopt contingency measures ... if the anticipated [new] technologies do not achieve planned reductions.” 42 U.S.C. § 7511a(e)(5)(B). EPA approved California’s use of “new technology measures” after determining that the South Coast cannot achieve the 1-hour standard by relying on existing reduction strategies alone. See 79 Fed. Reg. at 29,722. I agree with my colleagues that EPA’s reading of the Clean Air Act as permitting post-2010 plans to include “new technology measures” is reasonable.
But prior versions of the South Coast’s SIP likewise included “new technology measures” and the statutorily required “enforceable commitments to develop and adopt contingency measures” if the new technology measures failed. 42 U.S.C. § 7511a(e)(5)(B); Approval & Promulgation of State Implementation Plans; California—South Coast, 65 Fed. Reg. 6,091, 6,093, 6,099 (Feb. 8, 2000). The record in this case does not reveal whether those contingency measures triggered when the South Coast failed to attain the 1-hour standard by the 2010 deadline, but petitioners’ counsel’s responses to questions posed at oral argument suggest that the contingencies did not trigger because California withdrew them, and other control measures, from the South Coast SIP in 2008. See Association of Irritated Residents v. EPA, 686 F.3d 668, 673 (9th Cir. 2011) (“In 2008, California withdrew some of the 2003 Attainment Plan’s key elements, including many of the control measures.”). In 2009, EPA partially disapproved of California’s decision to withdraw control measures from its SIP, but it did not require the State to develop a new SIP to correct the error. Concerned citizens sued, and in Association of Irritated Residents we held that EPA could not ignore the State’s new, inadequate plan, but rather needed to solicit from California a revised SIP that demonstrated how the South Coast would attain the relevant ozone standard. Id. at 677.
Association of Irritated Residents clarified that EPA may not permit a state to delete from its SIP control measures that give the SIP teeth, such as section 182(e)(5) contingency measures. As is relevant here, Association of Irritated Residents ensures that the section 182(e)(5) *609 contingency measures incorporated into the South Coast’s 2013 SIP will be there when the South Coast anticipates that its new technology measures will achieve planned reductions. Hopefully the new technology measures function as promised; if not, the contingency measures should trigger as the Clean Air Act requires. See 42 U.S.C. § 7511a(e)(5)(B).